UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Clement Sao Nyonton**

   **v.**                                           Case No. 18-cv-481-PB
                                              Opinion No. 2019 DNH 038

**Christopher Brackett,
Superintendent of Strafford
County Department of
Corrections et al.**

**ORDER**

Clement Sao Nyonton, a foreign national, petitions this court for a writ of habeas corpus. He challenges his statutorily mandated detention, which has now exceeded fourteen months, and requests an individualized bond hearing.

Because Nyonton's claim is premature, I decline his request for an immediate bond hearing without prejudice to his right to renew his request if he continues to be detained after the removal period specified in 8 U.S.C. § 1231(a)(2).

**I. Background**

   **A. Clement Nyonton**

Clement Nyonton is a Liberian national who entered the United States as a refugee in 2000. He has not left since. See Doc. No. 31 at 4.

In 2008, Nyonton was convicted of possession of cocaine in the state of Rhode Island and served his sentence there. See Doc. No. 31 at 4. He was transferred to United States

1

Immigration and Customs Enforcement ("ICE") custody upon his release. See Doc. No. 31 at 4. While detained, Nyonton received a "Notice to Appear" for a removal hearing stating that he was to appear at a time and place "to be determined." Following Nyonton's hearing, he was ordered removed as an alien convicted of violating a controlled substance law pursuant to § 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(a)(2)(A). The subsequent 90-day "removal period" contemplated by 8 U.S.C. § 1231(a)(1)(A) expired on December 28, 2009. Instead of removing Nyonton, ICE at that point released him from custody on an order of supervised release. See Doc. No. 31 at 4.

In 2017, Nyonton was convicted of forgery and counterfeiting in Rhode Island. See Doc. No. 31 at 4. Upon his release from state custody on November 9, 2017, ICE took Nyonton into custody pending the execution of the prior removal order. See Doc. No. 31 at 5. He has been in ICE custody since that day.

On June 4 2018, Nyonton filed a pro se petition for a writ of habeas corpus in this Court. See Doc. No. 1. He asserted that he was entitled to an individualized bond hearing because he had been detained more than six months after his removal period ended and his deportation was not reasonably foreseeable.

See Doc. No. 1 at 2 (citing Zadvydas v. Davis, 533 U.S. 678, 686 (2001)).

While Nyonton's habeas corpus petition was pending, an immigration judge granted Nyonton's motion to reopen his removal proceeding because his "Notice to Appear" failed to designate the specific time and place for the hearing.[1] That grant shifted the statutory basis for his detention from 8 U.S.C. § 1231(a)(6) (providing that an "alien ordered removed who is inadmissible under section 1182[2] of this title . . . may be detained beyond the removal period") to 8 U.S.C. § 1226(c)(1)(A) (mandating that "Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2)").

On November 14, 2018, the immigration judge ordered Nyonton removed to Liberia. Because he did not appeal that order, it became final on December 14, 2018. See Doc. No. 30 at 2. When the new removal order became final, Nyonton was brought under

---

[1] The immigration judge based his ruling on the Supreme Court's decision in Pereira v. Sessions, 138 S. Ct. 2105, 2110 (2018), which held that a "notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' [of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996]."

[2] Nyonton's cocaine possession conviction rendered him inadmissible under § 1182(a)(2)(A) because he committed "a violation of . . . [a] law or regulation of a state . . . relating to a controlled substance." See 8 U.S.C. § 1182(a)(2)(A).

the purview of § 1231(a)(2), which dictates that "[d]uring the [90 day] removal period, the Attorney General shall detain the alien" and that "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2)." See Doc. No. 30 at 2.

So far, Nyonton has been detained under § 1231(a)(6) for slightly over seven months (from November 9, 2017 until July 16, 2018), detained under § 1226(c)(1)(A) for slightly under five months (from July 16, 2018 until December 14, 2018), and detained under § 1231(a)(2) for slightly under three months (from December 14, 2018 until today). If he is detained after March 14, 2019, when the removal period expires, the justification for his detention will revert to § 1231(a)(6).

## II. Detention and its limits

The Supreme Court has addressed challenges to two of the mandatory detention provisions under which Nyonton has been held.[3]

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court observed that indefinite mandatory detention following the issuance of a removal order and the expiration of the removal

---

[3] Nyonton was originally detained pursuant to 8 U.S.C. § 1231(a)(6) (at issue in Zadvydas), then under § 1226(c)(1)(A) (at issue in Kim), and now under § 1231(a)(2).

4

period pursuant to § 1231(a)(6) would "raise serious constitutional concerns." Id. at 682. It thus "construe[d] the statute to contain an implicit "6-month presumption" of reasonableness for continued detention pursuant to § 1231(a)(6), after which, if an alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. The Zadvydas decision is based on statutory, not constitutional grounds. Therefore, the court did not determine whether § 1231(a)(6) conflicted with the Due Process Clause.

In Demore v. Kim, 538 U.S. 510 (2003), a petitioner alleged that the mandatory detention required by 8 U.S.C. § 1226(c) "violated due process because the [government] had made no determination that he posed either a danger to society or a flight risk." Id. at 514. The Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Id. at 523 (citation omitted). It concluded, however, that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." Id. at 513.

The provisions analyzed in Zadvydas and Kim are two of the three mandatory detention provisions that the government has relied on to detain Nyonton over the past fifteen months. This case differs from both Zadvydas and Kim, however, because Nyonton is still within the 90 day period for which detention is mandatory pursuant to § 1231(a)(2).

**III. Statutory limitations on detention**

Section 1231(a)(2) is crystal clear. It provides, in relevant part, that, "[d]uring the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible [for a controlled substance violation] under section 1182(a)(2) . . . ." 8 U.S.C. § 1231(a)(2). The statute thus commands that "the Attorney General shall detain the alien." In even starker language, Congress also ordered that individuals, such as Nyonton, who have been found inadmissible because of a controlled substance violation shall be released during the removal period "[u]nder no circumstance." The use of this mandatory language denies the Attorney General discretion to release an alien that is subject to this provision. Cf. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) (noting that the "mandatory 'shall,' . . . normally creates an obligation

6

impervious to judicial discretion") (citing Anderson v. Yungkau, 329 U.S. 482, 485 (1947)).

Nyonton's reliance on Zadvydas to avoid the clear meaning of § 1231(a)(2) is misplaced. That case construed § 1231(a)(6). Although Nyonton was previously held under § 1231(a)(6) beyond Zadvydas's "presumptively unreasonable" six-month limit. He is currently detained under § 1231(a)(2) because he is again within the removal period. Accordingly, § 1231(a)(6), which provides in general terms that certain aliens "may be detained beyond the removal period," must yield to the more specific commands in § 1231(a)(2) that aliens "shall" be detained and "[u]nder no circumstance" released within the removal period. See Bloate v. United States, 559 U.S. 196, 207–08 (2010) ("[G]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment . . . ." (quoting D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208 (1932)) (internal quotation marks omitted).

In short, § 1231(a)(2) is only susceptible to one interpretation and that interpretation requires mandatory detention during the removal period.[4]

---

[4] To the extent that Nyonton argues that his detention during the removal period without an individualized bond hearing violates his right to due process, his argument is unavailing for the

7

**IV. Detention after removal period**

The government maintains that Nyonton's Zadvydas claim will not be ripe even after the removal period ends until his "present detention under 8 U.S.C. § 1231 lasts beyond six months." Doc. No. 36 at 5. It thus seems to argue that the five-month intermezzo under § 1226 cured the Zadvydas breach arising from Nyonton's seven-month post-removal detention from November 9, 2017 until July 16, 2018. I disagree.

The removal period for Nyonton ends on March 14, 2019. He has already been detained for seven months under § 1231(a)(6), longer than the presumptively unreasonable six-month period set forth in Zadvydas. Interpreting that provision, the Supreme Court explained that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. Nyonton still lacks travel documents. The government has no date by which it expects to receive those documents, much less remove petitioner. Accordingly, although I deny Nyonton's request for an immediate individualized bond hearing, I do so without prejudice. Nyonton has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." See Zadvydas, 533 U.S. at 701. The government has not

---

reasons set forth in Khotesouvan v. Morones, 386 F.3d 1298, 1300-01 (9th Cir. 2004).

yet responded "with evidence sufficient to rebut that showing." Id. Should these circumstances persist beyond the removal period, his continued detention cannot be authorized without an individualized bond hearing.

**V. Conclusion**

Nyonton is subject to mandatory detention under 8 U.S.C. § 1231(a)(2) until the removal period expires on March 15, 2019. Until then, his Zadvydas claim is premature.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 7, 2019

cc: Simon R. Brown, Esq.
Thomas P. Velardi, Esq.
T. David Plourde, Esq.